FAIRFIELD LEASE CORPORATION *v.* MARCEL PRATT

CIRCUIT COURT

SEVENTH CIRCUIT
FILE No. CV 7-665-8233

Memorandum filed April 27, 1971

*Samuel M. Chambliss,* of Bridgeport, for the plaintiff.

*Thomas B. Griglun,* of Meriden, for the defendant.

JACOBS, J. On January 7, 1966, U-Vend, Inc., of Yonkers, New York, hereinafter referred to as the lessor, and the defendant, the lessee, entered into a so-called lease agreement which provided for the rental of a coffee machine for the term of thirty-six months beginning on the date of delivery of the machine to the lessee. For the use of the equipment, the lessee agreed to pay the lessor rent of $39.50 per month for thirty-six consecutive months beginning on January 10, 1966. The lease contained an

acceleration clause (clause 15) by the terms of which, in event of default, the lessee "shall be liable for all expenses lessor may incur in connection with the enforcement of its remedies, including legal expenses and attorney's fees, equal to . . . 20% of the total unpaid balance. Lessee shall also pay all necessary charges for the return of the equipment to the Lessor upon breach of or in default in this agreement." Clause 22 provided that "[t]his agreement shall be deemed to have been made in the State of New York, regardless of the order in which the signature of the parties shall be affixed hereto, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of New York." Clause 19 contained a provision for waiver of defense on the part of the lessee as against the lessor's assignee. On January 17, 1966, by an instrument entitled "Assignment of Lease," the lessor assigned all of its rights and remedies under the lease to the plaintiff.

The complaint alleged that "the defendant defaulted in making the payment due on March 10, 1966"; that the assignee "duly notified the defendant but the same and subsequent payments have not been paid"; and that "[s]aid [Lease] Agreement provides, in the event of default, that the plaintiff may declare the entire unpaid balance due and for expenses of collection and attorney's fees in the amount of twenty (20%) per cent of said unpaid balance." The plaintiff claimed damages of $1700. The answer in effect amounted to a general denial. A paragraph of the special defense may be construed as setting up the defense that the lease agreement was invalid as being "unreasonable and contrary to law."

Undoubtedly, parties to a contract may expressly select the choice of law by which it is to be governed. *Pollak* v. *Danbury Mfg. Co.*, 103 Conn. 553, 557;

6A Corbin, Contracts § 1446, p. 485, n.54; 16 Am. Jur. 2d, Conflict of Laws, § 46. "The [Uniform Commercial] Code's general choice of law provision leaves the determination of applicable law to common law principles." 1 Gilmore, Security Interests in Personal Property § 10.8, p. 316. Under General Statutes § 42a-1-105 (1), "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law of this state or of such other state or nation shall govern their rights and duties." The courts of this state are authorized by statute (see General Statutes §§ 51-32, 52-163, 52-164) to take judicial notice of the law of sister states.

The courts of the state of New York have construed an assigned lease which was identical with the lease agreement now before this court. In *Fairfield Lease Corporation* v. *Umberto,* 7 U.C.C. Rep. 1181, 1183, the Civil Court of the City of New York said of that assigned lease: "An examination of the assigned lease agreement discloses that it contains numerous clauses—terms, varying in importance to be performed by the defendant. Clause 6 requires the defendant to make repairs and replacements of the lessor's equipment at its own cost and expense. By the terms of Clause 9, defendant agrees to pay all taxes, fees and similar charges imposed by the ownership, possession or use of the leased equipment and Clause 11 provides that in the event defendant should fail to pay such taxes, etc., the amount thereof shall be treated as additional equipment rent and shall attach to the next month's installment of rent. Clauses 6, 9 and 11, each standing alone, . . . [are] harmless; each requires ordinary and expected performance. But if there be a breach of any one of these clauses, the force and effect of Clauses 13, 14 and 15 are set in motion and this is . . . [disastrous] for the lessee.

"Read Clause 13. There we observe that by the terms thereof the lessor is given not only the right to repossess the leased equipment, but it is given the right to accelerate all unaccrued and unearned rent, and this, upon defendant's failure to pay equipment rent when due or upon his failure to perform any condition of the lease no matter how trivial the condition may be; see Clause 6 dealing with repairs and replacement of equipment; see Clause 17 which declares the agreement breached by interfering with lessor's property. Under Clause 14 the Lessor's remedies are cumulative in the event defendant defaults in any term or condition of the lease, whether the default be minor or not; and Clause 15 provides if the lessee defaults in the performance of any other lease had with plaintiff's assignor, such default shall be considered a default of this, the subject lease . . . sued upon. Clause 13 is the weapon clause. An insignificant violation of what is a harmless condition or clause of the lease agreement sets Clause 13 in operation. Clauses 13, 14 and 15 of this assigned lease are harsh and penal, subjecting the lessee-defendant to a forfeiture—to a penalty for a violation of minor and trivial terms of the agreement as well as for a violation of another agreement, if any there be, between the lessee-defendant and plaintiff's assignor. Agreements such as these will not be recognized. The law will not consent to its enforcement and [it] must be condemned."

Exercising its power under the Uniform Commercial Code § 2-302 (our statute § 42a-2-302), the New York court held that the lease agreement was unfair and placed the lessee at a disadvantage. "Such a lease agreement," said the court (p. 1184), "is rooted in forfeiture; it inflicts a penalty; a contract is terminated not by performance but by breach resulting in a punishing finality—the victim, the lessee.

This is not an agreement that this trial court can say in good conscience is not unconscionable and that it may be enforced. It is an agreement penal in structure and substance. Hence, it is unenforceable . . . and plaintiff may not recover thereon."

In *Fairfield Lease Corporation* v. *Commodore Cosmetique, Inc.*, 7 U.C.C. Rep. 164, the Civil Court of the City of New York, finding as a fact that the fresh brew coffee machine failed to function properly, applied the implied warranty of fitness for use doctrine (Uniform Commercial Code § 2-315). See General Statutes § 42a-2-315. The court also found (p. 166) "that there was a close alliance between the assignee and U-Vend of such a nature that the assignee in this instance should be estopped from enforcing defendant's waiver of the right to assert against the assignee the defenses existing against U-Vend as provided in paragraph 19 of the lease. In making this decision U.C.C. § 9-206 was taken into consideration" (citing, inter alia, *Fairfield Lease Corporation* v. *Marsi Dress Corporation*, 60 Misc. 2d 363).

The court must conclude that the lease agreement is so one-sided as to be unconscionable. See Connecticut General Statutes Annotated (West Ed.) § 42a-2-302 & comments. The court finds that this lease agreement, according to New York law (see clause 22), is unenforceable.

For reasons set forth herein, judgment may enter for the defendant.