**In the Matter of UNITED STATES MACHINE TOOLS, INC., f.k.a. D & D Electronics, Inc., Debtor.**

**UNITED STATES MACHINE TOOLS, INC., (f.k.a. D & D Electronics, Inc.), Plaintiff,**

v.

**FIRST UNION COMMERCIAL CORPORATION (f.k.a. First Union Caesar Corporation), Defendant.**

**FIRST UNION COMMERCIAL CORPORATION (f.k.a. First Union Caesar Corporation), Counterclaimant,**

v.

**UNITED STATES MACHINE TOOLS, INC., (f.k.a. D & D Electronics, Inc.), Numex Corporation, David W. Duquette, James F. Duquette, and William J. Laskarzewski, Counterclaim Defendants.**

Bankruptcy No. 2–82–00104.
Adv. No. 2–83–0266.

United States Bankruptcy Court,
D. Connecticut.

June 19, 1985.

See also 38 B.R. 984.

Lissa J. Paris, and John C. Yavis, Jr., Murtha, Cullina, Richter & Pinney, Hartford, Conn., for debtor-plaintiff.

Bourke G. Spellacy, Deborah Monteith and Cameron L. Cowan, Updike, Kelly & Spellacy, P.C., Hartford, Conn., for defendant and counterclaimant.

Paul H. Lichtenberger, and Jerome D. Elbaum, Blume & Elbaum, Hartford, Conn., for David W. Duquette, James F. Duquette and William J. Laskarzewski, counterclaim defendants.

## MEMORANDUM AND ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

United States Machine Tools, Inc. (USMT), following confirmation of its plan,[1] instituted an eight-count complaint on June 24, 1983, in the bankruptcy court against First Union Commercial Corporation (First Union). First Union answered the complaint and filed a counterclaim against USMT and four other counterclaim defendants. The USMT action seeks damages based, *inter alia*, upon allegations of usury and unfair trade practices relating to a series of pre-bankruptcy loans from First Union to USMT. The first count alleges that the interest rates charged by First Union on its loans to USMT starting on November 1, 1979 were usurious under 12 U.S.C. § 86a. That statute sets on business or agricultural loans an interest rate limit of five percentage points over the Federal Reserve Bank discount rate on 90-day commercial paper, unless State law permits a higher rate. The second count

1. USMT filed a voluntary chapter 11 petition in the bankruptcy court on February 2, 1982, and confirmation of its plan occurred on June 24, 1983.

alleges that the interest rates charged by First Union were greater than that allowed by Connecticut statute and were usurious. In the third count, USMT asserts the violation of 12 U.S.C. § 86a by First Union constitutes an unfair trade practice under Conn.Gen.Stat. § 42–110a. USMT alleges, in count four, that First Union unlawfully failed to deliver termination statements for collateral being sold by USMT upon an offer of full payment of all loans, and the fifth count claims that such failure to deliver termination statements constituted an unfair trade practice.

First Union has filed a Motion for Partial Summary Judgment, contending, as to counts one, two and three, that there is no genuine issue of fact to be tried, with the sole issue being the application of either Connecticut or North Carolina law to determine whether the loan transaction involved usurious interest rates. First Union's motion seeks summary judgment on counts four and five on grounds of collateral estoppel, alleging that a district court has previously ruled that USMT's arguments in these counts are without merit. USMT filed a Cross-motion for Partial Summary Judgment as to counts one and two and objected to the granting of First Union's motion as to counts three, four and five.

## II.

On counts one, two and three, First Union and USMT have filed statements of material facts as to which each contends there is no genuine issue to be tried. Neither party's papers include a statement of material facts as to which it is contended that there exists a genuine issue to be tried. *See* Local Rule of Civil Procedure 9(c) and Fed.R.Civ.P. 56. Accordingly, it appears appropriate to render a summary judgment on the issue presented by the parties as determinative—does Connecticut law or North Carolina law apply to the interest rates charged by First Union?

USMT contends that Connecticut law applies, making the interest charges usurious. USMT concedes that if North Carolina law applies, the rates are not usurious. First Union, while not conceding that the rates would be illegal under Connecticut law, asserts that North Carolina law applies. Since both parties' arguments assume the application of Connecticut choice-of-law rules, and such assumption is not unreasonable, the court will do likewise. ·

### A.

On November 1, 1979, First Union entered into a written Loan Agreement (Loan Agreement) with USMT to cover the making of two loans to USMT. One loan, for $100,000.00, was for a term of 20 months. The second loan, with a limit of $2,000,-000.00, was a revolving credit loan based upon USMT accounts receivable and inventory. The receivables and inventory were security for the loan and, in addition, USMT gave First Union a second lien on other personal property. The annual interest rates on these loans were set as 4½ points over the prime rate of First Union National Bank of North Carolina, and, as such, varied over the duration of the loan from 15½ to 26 percent per annum. On June 26, 1980, the term loan was increased to $250,000.00, and the revolver loan limit was increased to $3,000,000.00. In the Loan Agreement, and all promissory notes, extension agreements and other documents authorized by the Loan Agreement, First Union and USMT stipulated that all the rights and obligations of the parties would be governed by the law of the State of North Carolina.[2] The promissory notes evidencing all loans provided that payments were to be made at Charlotte, North Carolina. First Union is incorporated under the laws of North Carolina and has its principal place of business in Charlotte. It is a wholly-owned subsidiary of First Union

---

**2.** Section IX D of the Loan Agreement reads as follows:

This Agreement and the rights and obligations of the parties hereunder and any other instruments or documents issued hereunder shall be construed, governed and interpreted in accordance with the laws of the State of North Carolina and shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

National Bank, which has its principal place of business in Charlotte. USMT is incorporated under the laws of Connecticut. It is a wholly-owned subsidiary of Numex Corporation, a Delaware corporation, and both corporations have their principal places of business in Hartford.

On November 1, 1979, the original loan documents were executed by the parties at the office of First Union counsel in Hartford. The June 26, 1980 loan documents, increasing and extending the loans, were accepted by First Union in Charlotte and executed by USMT in Hartford. On June 9, 1981, USMT and First Union met in Charlotte and negotiated a further modification of the Loan Agreement. All funds advanced to USMT were made by wire transfer from a First Union account in Charlotte to a USMT bank account in Hartford. Original loan documents were kept at First Union's office in Charlotte. The assets on which First Union was granted a security interest were located in Hartford, and First Union personnel came to Hartford from time to time to conduct audits of USMT and meet with USMT management. USMT assigned its accounts receivable to First Union, pursuant to the Loan Agreement, and notified its customers to direct all remittances to First Union in Charlotte. Originally, collections of accounts receivable made by USMT were deposited in a First Union bank account in Hartford. After the signing of the loan revision document on June 9, 1981, USMT mailed all such collections to First Union in Charlotte. Sometime prior to June 9, 1981, counsel for USMT notified First Union of the possibility that the USMT loans were in violation of Connecticut usury laws.

### B.

First Union contends, under the uncontroverted facts, the court should give effect to the parties' agreement that North Carolina law shall govern the loan transaction as there is a reasonable relationship between North Carolina and the loan transaction. USMT argues that notwithstanding the stipulation in the loan documents

agreeing to allow North Carolina law to govern, Connecticut law controls because "almost every contact between the parties occurred in Connecticut", *see USMT Memorandum* at p. 3, and because "contractual choice-of-law provisions have no special weight in usury cases." *See USMT Memorandum* at p. 6.

### C.

I find that both case and statutory law in Connecticut support the position taken by First Union. In 1961, the Supreme Court of Connecticut decided *Santoro v. Osman*, 149 Conn. 9, 12 174 A.2d 800 (1961), and noted "[t]he modern general rule ... that the validity of a note, as far as usury is concerned, depends upon the law of the place where it is payable." It concluded "that a note, valid where it was executed and was payable, but carrying a rate of interest which would be usurious had the note been executed and payable in Connecticut, 'contravenes [no] ... ancient and deeprooted public policy of this state.'" *Id.* A few months later, in *Pioneer Credit Corporation v. Radding*, 149 Conn. 157, 176 A.2d 560 (1961), the court reaffirmed the *Santoro* holding in sustaining the validity of a note signed in Connecticut and delivered to the payee in Massachusetts. The note was not illegal under Massachusetts law although it was usurious under Connecticut law. In 1961, Connecticut's version of the Uniform Commercial Code became effective, and Conn.Gen.Stat. § 42a–1–105(1) provides as follows:

Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this state.

The test of "reasonable relation" arises from the holding of the Supreme Court in *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123

(1927). In that case, the plaintiff-lender was a Pennsylvania corporation with its office in Philadelphia. The loan documents required repayment at the plaintiff's office in Philadelphia. The loan with the defendant was negotiated in New York, and the plaintiff forwarded the funds to the defendant in New York. The interest rate charged was legal in Pennsylvania but not in New York. The Supreme Court said:

> [W]e think it immaterial whether the contract was entered into in New York or Pennsylvania.... [A] Pennsylvania corporation having its place of business in Philadelphia could legitimately lend funds outside the state and stipulate for repayment in Pennsylvania in accordance with its laws, and at the rate of interest there lawful, even though the agreement for the loan were entered into in another state where a different law and a different rate of interest prevailed.

*Id.* at 407, 47 S.Ct. at 627. The Court cautioned, however, against an "evasion or avoidance at will of the usury law otherwise applicable, by the parties entering into the contract or stipulating for its performance at a place which has no normal relation to the transaction and to whose law they would not otherwise be subject." *Id.* at 408, 47 S.Ct. at 628. The court concluded:

> Here, [plaintiff], organized and conducting its business in Pennsylvania, was subject to laws of that state and had a legitimate interest in seeking their benefit. The loan contract which stipulated for repayment there and which thus chose that law as governing its validity cannot be condemned as an evasion of the law of New York which might otherwise be deemed applicable.

*Id.* at 408–409, 47 S.Ct. at 628.

▆▆▆ In the present matter, First Union is organized and doing business in North Carolina. The loan documents call for payment there. The loan documents are kept in North Carolina. The monies were transferred from North Carolina, and USMT's customers were notified to send all remittances there. I believe a Connecticut court would find these and the other contacts previously noted sufficient to satisfy the test of reasonable relation referred to in § 42a–1–105(1). The test is not whether Connecticut has more significant contacts with that transaction, which it well may have, but, rather, whether there is a reasonable relationship between North Carolina and the transaction so as to uphold the parties' express stipulation that North Carolina law should apply[3]. *See Santoro v. Osman, supra; Pioneer Credit Corporation v. Radding, supra; Solevo v. Aldens, Inc.,* 395 F.Supp. 861, 864 (D.Conn. 1975); *Peragallo v. Sklat,* 39 Conn.Supp. 510, 513, 466 A.2d 1200 (1983); *Cf. Gannett Co., Inc. v. Register Publ. Co.,* 428 F.Supp. 818, 824 (D.Conn.1977); *International Union of Electrical, Radio and Machine Workers v. General Electric Co.,* 148 Conn. 693, 698, 174 A.2d 298 (1961); *Pollack v. Danbury Mfg. Co.,* 103 Conn. 553, 557, 131 A. 426 (1925); *Hertz Commercial Leasing Corporation v. Dynatron, Inc.,* 37 Conn.Supp. 7, 10, 427 A.2d 872 (1980); *Fairfield Lease Corp. v. Pratt,* 6 Conn.Cir.Ct. 537, 278 A.2d 154 (1971).

USMT asserts and emphasizes that not all payments were made in North Carolina, despite the provision contained in the notes for payment there. The Supreme Court addressed a similar argument in *Seeman, supra,* at 409, 47 S.Ct. at 628, and stated:

> [W]e do not think this circumstance standing alone is sufficient to vary the application of the rule .... The fact that in some instances wholly unexplained such payments were received elsewhere affords no basis for the contention that the written stipulation for payment in Philadelphia was not the real one or that its obligation was waived.

The Motion for Partial Summary Judgment filed by First Union as to counts one, two and three is granted, and the Cross Motion of USMT for Summary Judgment is denied.

---

**3.** Paraphrasing *Woods-Tucker Leasing Corporation of Georgia v. Hutcheson-Ingram Develop-* *ment Company,* 642 F.2d 744, 749–750 (5th Cir. 1981).

## III.

To support its motion for summary judgment on counts four and five on grounds of collateral estoppel, First Union submits a decision by the district court (Cabranes, J.), denying a motion by USMT to vacate First Union's voluntary dismissal of prepetition litigation between these parties—*First Union Caesar Corp. v. United States Machine Tools, Inc.*, No. 81–540 Slip Op. (D.Conn.1982). First Union says that this decision ruled that the allegations in counts four and five are without merit.

■ For collateral estoppel to apply, First Union must show that:

'if an issue of fact or law was actually litigated and determined by a valid and final judgment,' and said determination was 'essential to the first judgment', said 'determination is conclusive in a subsequent action between the parties', but only when the party against whom preclusion is asserted [has] had a 'full and fair opportunity' to litigate the claim or issue in the first action.

*Drescher v. Hoffman Motors*, 585 F.Supp. 555, 557 (D.Conn.1984) (citation omitted). In the ruling by Judge Cabranes, he was concerned with a motion by USMT to vacate a voluntary dismissal of an action by First Union. USMT sought the vacation of the dismissal for the purpose of presenting its defenses to First Union's cause of action. No evidence was taken, and Judge Cabranes specifically stated: "USMT has also not presented to the court any reasons why it (USMT) cannot press its claim against First Union in another action on another day. Under these circumstances, the court concludes that USMT's claims would more appropriately be raised in a new action." This language makes it abundantly clear that the district court did not intend the ruling to be a conclusive determination and the court specifically referred to the appropriateness. of another action between the parties. The motion of First Union for summary judgment as to counts four and five on grounds of collateral estoppel is denied.

## IV.

In terms of the Bankruptcy Amendments and Federal Judicial Act of 1984, the USMT complaint initiated a proceeding which is not a core proceeding, but may be one "that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).[4] In such instance, absent consent of the parties, only a district judge may enter a final order or judgment. The ruling contained herein is interlocutory as it determines a motion for partial summary judgment and does not finally dispose of the entire proceeding. The ruling would not be a final judgment for the purposes of Fed.R.Civ.P. 54(b).[5] *See Aetna Insurance Co. v. Newton*, 398 F.2d 729, 733 (3rd Cir.1968). I assume that § 157(c)(1) is to be similarly construed, and this ruling, accordingly, will not be submitted to a district judge for entry as a final order or judgment. It is

SO ORDERED.

---

**4.** 28 U.S.C. § 157(c)(1) provides as follows:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

**5.** *Rule 54. Judgments; Costs.*

(b) JUDGMENT UPON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.