In re PURITY ICE CREAM
COMPANY, INC., Debtor.

**Bankruptcy No. 87–00018.**

United States Bankruptcy Court,
D. South Carolina.

June 17, 1988.

Julio E. Mendoza, Jr., Robinson, Mendoza, Barton & McCarthy, P.A., Columbia, S.C., for debtor.

William L. Harritt, Levi, Wittenberg, Harritt, Hoefer & Davis, P.A., Sumter, S.C., for Sweetheart Packaging Corp.

MEMORANDUM AND ORDER

J. BRATTON DAVIS, Chief Judge.

Before the court is the motion of Sweetheart Packaging Corporation for relief from the automatic stay imposed by 11 U.S.C. § 362.[1]

---

**1.** Further references to the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) shall be by section num-    bers only.

## FACTS

1. Purity Ice Cream Company, Inc. ("the debtor"), is a South Carolina Corporation which does business in Charleston County, South Carolina.

2. Sweetheart Packaging Corporation ("the movant") is a nonresident corporation which leases ice cream processing equipment and sells ice cream products. The movant's corporate offices are located at 10100 Reisterstown Road, Owings Mills, Maryland.

3. By virtue of an agreement entitled "Equipment Placement Agreement" and dated April 22, 1985, the movant leased to the debtor ice cream processing equipment ("the equipment"). The equipment, a basic Flex–E–Fill machine No. 98, aids the debtor in processing ice cream products, some of which are sold by the movant to the debtor. In the equipment placement agreement, NCE Corporation is the "lender". NCE Corporation subsequently changed its trade name to Sweetheart Packaging Corporation, and Sweetheart Packaging Corporation now stands in the place of NCE Corporation with respect to the equipment placement agreement. Of indefinite term, the equipment placement agreement could be terminated by either party upon thirty days written notice. The agreement provides for a service charge of $100. per month and contains a stipulation by the parties that the loss value of the equipment for insurance purposes is $50,000. By the terms of the agreement, title to the equipment at no time transfers to the debtor. Nor does the agreement provide for the purchase of the equipment for a nominal sum at the end of the lease.

4. Upon default by the debtor in paying for products sold by the movant, the movant, by letter from its corporate offices in Maryland dated October 30, 1986, notified the debtor of its intention to take possession of the equipment within thirty (30) days pursuant to the terms of the equipment placement agreement.

5. As of January 2, 1987, the date the debtor filed its petition for relief under chapter 11 of the Bankruptcy Code, the movant had not taken possession of the equipment.

6. The movant did not file a Uniform Commercial Code (UCC–1) financing statement or any other writing to record its interest in the equipment.

## ISSUES

1. Whether the movant's failure to file a UCC–1 financing statement subordinates its claim to the equipment to that of the debtor pursuant to § 544 and S.C.Code § 27–23–80 (1976).

2. If the movant possesses an interest in the equipment superior to that of the debtor, whether the movant is entitled to relief from the stay pursuant to §§ 362(d)(1) or 362(d)(2).

## DISCUSSION

### I

### A

Pursuant to § 1107(a)[2], the debtor in this case is a debtor in possession and is vested with the trustee's avoiding powers under § 544(a).[3]

**2.** Section 1107(a) states: Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

**3.** Section 544(a) states: The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may

avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or (3) a bona fide

The debtor asserts that because the movant failed properly to record a document reflecting the movant's interest in the equipment, the debtor's interest in the equipment is superior to that of the movant. The debtor notes that the provisions of S.C.Code § 27–23–80 (1976)[4], when raised by a trustee under § 544(a), have been held to provide the trustee with an interest superior to that of the bailor or lessor of the property. *See In re Bazen,* 425 F.Supp. 1184 (D.S.C.1977), *aff'd without opinion,* 571 F.2d 574 (4th Cir.1978); and *C.C. Vaughn and Sons, Inc. v. Anderson (In re South Atlantic Packers Association, Inc.),* 37 B.R. 244 (Bankr.D.S.C.1982).

In this case, the subject property is equipment, and the debtor contends that the movant's proper means for compliance with S.C.Code § 27–23–80 (1976) (hereinafter "the bailment statute") is by filing a UCC–1 financing statement with the South Carolina Secretary of State. S.C.Code §§ 36–9–302(1) and 36–9–401(1).[5] *In re Bazen,* 425 F.Supp. 1184 (D.S.C.1977), *aff'd without opinion,* 571 F.2d 574 (4th Cir. 1978). No such filing having been made, the debtor claims an interest in the equipment superior to that of the movant, and relies on *In re Bazen, supra; C.C. Vaughn & Sons, Inc. v. Anderson (In re South Atlantic Packers Association, Inc.), supra;* and *In re Ken Johnson Toyota, Ltd.,* 35 B.R. 18 (Bankr.D.S.C.1983).

**B**

The movant, contending that the bailment statute is not applicable to the present facts, says: (1) the equipment placement agreement provides that the laws of Maryland govern all disputes arising out of the agreement; (2) the equipment is not part of the debtor estate in that the movant terminated the equipment placement agreement prior to the filing of the debtor's petition for relief; and (3) even if the bailment statute applies, the facts fall within the "temporary use" exception to the statute.

**C**

**1**

The equipment placement agreement provides that the laws of Maryland shall govern all disputes arising under the contract.

Asserting that the laws of Maryland govern the rights of the parties in the equipment, the movant cites South Carolina Code § 36–1–105(1) (1976) which states:

Except as provided hereafter in this section, when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties. Failing such agreement, this act applies to transactions bearing an appropriate relation to this State.

---

purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**4.** South Carolina Code § 27–23–80 (1976) states: Every agreement between the vendor and vendee or the bailor and bailee of personal property whereby the vendor or bailor shall reserve to himself any interest in the property shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for a valuable consideration without notice *unless* such agreement be reduced to writing and recorded in the manner provided by law for the recording of mortgages. In the case of a subsequent mortgagee of the

property for valuable consideration without notice, the instrument evidencing such subsequent mortgage must be filed for record in order for its holder to claim under this section as a subsequent mortgagee for value without notice and the priority shall be determined by the time of filing for record. But nothing herein contained shall apply to livery stable keepers, innkeepers or other persons letting or hiring property for temporary use or for agricultural purposes or depositing such property for the purpose of repairs or work or labor done thereon or as a pledge or collateral to a loan.

**5.** At issue is whether the South Carolina bailment statute applies—there is no dispute as to the proper place for recording the movant's interest in the equipment should it be found that the bailment statute applies.

The debtor, arguing that S.C.Code § 36–1–105(1) (1976) is not applicable here, contends: first, that S.C.Code § 36–1–105(1) (1976) applies only to transactions governed by Article 9 of the Uniform Commercial Code[6] as enacted in South Carolina; and, second, that the equipment placement agreement is a true lease and, as such, falls outside the scope of Article 9. *See In re Bazen, supra,* at 1185. The bailment statute applies to true leases of personal property in South Carolina as such leases fall outside the scope of Article 9. *See Ken Johnson Toyota, Ltd.,* 35 B.R. 18 at 19 (Bankr.D.S.C.1983); S.C.Code § 36–10–103 (1976); and 30 S.C.L. Rev. 577 at 565.

In other words, the debtor posits that the bailment statute applies to the equipment placement agreement, and that, inasmuch as S.C.Code § 36–1–105 (1976) does not apply to transactions governed by the bailment statute because such transactions are beyond the scope of Article 9, that section may not be invoked with respect to the equipment placement agreement.

2

With respect to what choice of law rule should be applied by a bankruptcy court, the United States Court of Appeals for the Fourth Circuit has stated recently: "We believe, however, that in the absence of a compelling federal interest otherwise, the *Klaxon* rule should prevail where a federal bankruptcy court seeks to determine the extent of a debtor's property interest." *In re Merritt Dredging Co., Inc.,* 839 F.2d 203, at 206 (4th Cir.1988). The *Klaxon* rule holds that a federal court which has jurisdiction by virtue of diversity of citizenship must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Sten-*

*tor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), as cited by *In re Merritt Dredging Co., Inc., supra,* at 205, (hereinafter *Merritt*).

The Uniform Commercial Code, as adopted by South Carolina, the state in which this court sits, includes a choice of law provision which states, in part, "[W]hen a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or such other state or nation shall govern their rights and duties." S.C.Code § 36–1–105(1) (1976). *See Merritt, supra,* at 206. The parties have agreed that the laws of Maryland would govern all disputes arising under the equipment placement agreement and such a choice of law provision should control if the transaction bears a "reasonable relation" to Maryland.

The movant, admittedly not a South Carolina corporation, maintains its corporate offices in Maryland. It is not established in the record whether the movant is a Maryland corporation. Nor is it established where the equipment placement agreement was executed. However, it is clear that termination of the equipment placement agreement by the movant was effected in accordance with the equipment placement agreement by a letter from movant sent from Maryland.

■ Given these facts, the court finds that the transaction bears a "reasonable relation" to Maryland for the purposes of S.C.Code § 36–1–105(1) (1976). *See Fairfield Lease Corp. v. Pratt,* 6 Conn.Cir.Ct.

6. S.C.Code § 36–9–102 (1976) states: (1) Except as otherwise provided in § 36–9–103 on multiple state transactions and in § 36–9–104 on excluded transactions, this Chapter applies so far as concerns any personal property and fixtures within the jurisdiction of this State (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also (b) to any sale of accounts, contract rights or chattel paper. (2) This chapter applies to secur-

ity interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This Chapter does not apply to statutory liens except as provided in § 36–9–310. (3) The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply.

537, 278 A.2d 154 (1971) which is cited in 63 A.L.R.3rd 341 at 348.

The debtor's arguments with regard to the application of S.C.Code § 36–1–105(1) (1976) are not convincing. While it is settled that the bailment statute applies to true leases of personal property in South Carolina as such leases fall outside the scope of Article 9, see S.C.Code §§ 36–9–102 and 36–10–103 (1976), *In re Bazen, supra,* and *In re Ken Johnson Toyota, Ltd., supra,* it is not clear that true leases of personal property in South Carolina fall outside the scope of S.C.Code § 36–1–105(1) (1976), which section is not a part of Article 9, but is a general provision of the UCC. While the debtor offers no authority for the proposition that S.C.Code § 36–1–105(1) (1976) should not apply to transactions which fall outside the scope of Article 9, at least one court has applied the UCC (1–105) choice of law provisions to a transaction which falls outside the scope of Article 9. *See, Fairfield Lease Corporation v. Pratt, supra.*

Particular chapters of the UCC apply to specific types of commercial transactions. For example, chapter 2 applies to sales, and chapter 9 pertains to secured transactions. Chapter 1, however, contains the general provisions of the UCC and includes S.C. Code § 36–1–105(1) (1976). There is no language in Chapter 1 of the UCC, as adopted in South Carolina, which limits the application of the chapter to a particular type of commercial transaction. More specifically, Chapter 1 of the UCC (unlike Chapter 9, S.C.Code § 36–9–102 (1976)) does not contain a provision which excludes application to true leases.

Chapter 1 of the UCC does, however, contain a provision concerning the purposes of the UCC and rules regarding its construction. South Carolina Code § 36–1–102 (1976) states, in part:

(1) This act [the UCC] shall be liberally construed and applied to promote its underlying purposes and policies.

(2) Underlying purposes and policies of this act are

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

The Official Comment to S.C.Code § 36–1–102 (1976) states, in part;

This Act [the UCC] should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as [sic] also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved.

Applying the rules of construction and the stated purposes of the UCC, there seems no basis for the narrow construction of S.C.Code § 36–1–105(1) (1976) advocated by the debtor. The equipment placement agreement represents a commercial transaction. The parties agreed that the laws of Maryland would govern all disputes arising under the agreement. *See* S.C.Code § 36–1–102(2)(b) (1976). South Carolina Code § 36–1–105(1) (1976) specifically authorizes such a choice of law provision to control the type of commercial transaction here involved. *See* previous discussion.

Even if S.C.Code § 36–1–105(1) (1976) is not applicable, the common law of South Carolina requires application of the law of Maryland since the parties agreed that Maryland law would apply and the transaction bears a reasonable relationship to Maryland. *See Standard Register Co. v. Kerrigan,* 238 S.C. 54, 119 S.E.2d 533 (1961).

This proceeding involves a dispute between the parties to the equipment placement agreement; not a dispute between the movant and a subsequent creditor without notice of the movant's interest in the equipment. *Cf. In re Automated Bookbinding Services, Inc.,* 336 F.Supp. 1128 (D.C.D.Md.1972). This is not a situation in which a choice of law provision is invoked to bind a third party. That distinction is

**188**

significant in view of the purpose of the bailment statute to protect subsequent creditors from secret liens. *Wardlaw v. Troy Oil Mill,* 74 S.C. 368, 372–373, 54 S.E. 658, 660 (1906).

For the reasons given, the laws of Maryland should govern the rights of the parties in the equipment.

3

■ As does S.C.Code § 36–9–102 (1976), Md.Ann.Code, Commercial Law § 9–102 (1975) [7] provides, in part, that true leases are not governed by the provisions of Article 9. Therefore, if the equipment placement is a true lease, the movant would not be required to file a UCC–1 financing statement to perfect its interest in the equipment because no bailment statute exists in Maryland.

"Whether a putative lease actually represents a security interest depends upon the intent of the parties." *Merritt, supra,* at 208, 209. The agreement between the parties serves as evidence of their intention. A "security interest" is defined by Md.Ann. Code, Commercial Law § 1–201(37) (1975) as "an interest in personal property or fixtures which secures payment or performance of an obligation."

In this case, the equipment placement agreement, which either party could terminate upon 30–days written notice, contemplated no transfer of ownership and contained no option to purchase. Although the agreement provided for a service charge of $100. per month, the parties stipulated therein that the value of the equipment for insurance purposes was $50,000.

It seems unreasonable to construe the small monthly service charge as payment towards the purchase of equipment stipulated to be worth at least $50,000. The agreement does *not* provide that the debtor may purchase the equipment at the end of the lease for a nominal sum.

Evidence of an intention to create a security interest in the equipment is lacking. To the contrary, the evidence clearly indicates that the equipment placement agreement is a true lease.

Because the equipment placement agreement is a true lease, the movant, under Maryland law, is not required to file a UCC–1 financing statement in order to perfect its interest in the equipment. Therefore, the movant's failure to file a UCC–1 financing statement does not subordinate its interest in the equipment to that of the debtor pursuant to § 544.

Because the laws of Maryland govern this dispute between the parties to the equipment placement agreement, South Carolina's bailment statute, S.C.Code § 27–23–80 (1976), has no application.

4

Having decided that the movant's failure to file a UCC–1 financing statement does not subordinate its interest in the equipment to that of the debtor pursuant to § 544, the court need not address the other arguments made by the movant.

II

The movant, seeking relief from the automatic stay imposed by § 362(a), pursuant to § 362(d)(1) and (2),[8] appears entitled to

---

**7.** Maryland Ann.Code Commercial Law § 9–102 (1975) states: (1) Except as otherwise provided in § 9–103 on multiple state transactions and in § 9–104 on excluded transactions, this title applies so far as concerns any personal property and fixtures within the jurisdiction of this State (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contracts rights; and also (b) To any sale of accounts, contract rights or chattel paper. (2) This title applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title

retention contract and lease or consignment intended as security. This title does not apply to statutory liens except as provided in § 9–310. (3) The application of this title to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this title does not apply. (Ann.Code 1957, art. 95B, § 9–102; 1975, ch. 49, § 2.)

**8.** 11 U.S.C. § 362(d): On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack

that relief for cause pursuant to § 362(d)(1).

The determination of what constitutes "cause" is left to the broad discretion of the bankruptcy judge. *Central Fidelity Bank v. Coogan (In re Coogan)* 803 F.2d 1180 (4th Cir.1986).

The movant's failure to file a UCC–1 financing statement does not subordinate its interest in the equipment to that of the debtor. The party requesting relief from the stay on the basis that it holds a secured claim must establish the validity and perfection of its security interest. *In re Sea Island Motor Sales, Inc.,* 72 B.R. 170 (Bankr.D.S.C.1986); *In re Greiman,* 45 B.R. 574, 579 (Bankr.N.D.Iowa 1984). By demonstrating that it need not file a UCC–1 financing statement to perfect its interest in the equipment, the movant has carried this burden.

It is undisputed that the movant terminated the equipment placement agreement prior to the debtor's filing its petition for relief under chapter 11 of the Bankruptcy Code. A lease properly terminated under state law prior to the filing of the bankruptcy petition is not property of the estate which may be assumed or rejected. *Boone Coal & Timber v. Polan,* 787 F.2d 1056, 14 C.B.C.2d 1006 (6th Cir.1986). It has already been determined that the agreement in issue is a true lease. There is no dispute that the agreement was terminated properly according to its terms.

In that the agreement terminated prior to the filing of the bankruptcy petition, the equipment in issue is not property of the estate. *Id.* The debtor, therefore, has no interest in the equipment. As a result, adequate cause exists under § 362(d)(1) to grant relief from the automatic stay. *Carpenter v. Youngs (In re Youngs),* 7 B.R. 69 at 71, 3 C.B.C.2d 250 at 253 (Bankr.D.Mass. 1980).

Thus, the movant, pursuant to § 362(d)(1), is entitled to relief from the

stay in order to take possession of the equipment. *Id.* § 362(d)(1).

## CONCLUSION

The movant's failure to file a UCC–1 financing statement does not subordinate the movant's interest in the equipment to that of the debtor pursuant to § 544 and S.C.Code § 27–23–80 (1976).

## ORDER

The movant, pursuant to § 362(d)(1), is entitled to relief from the automatic stay in order to pursue its claim to the ice cream processing equipment.

AND IT IS SO ORDERED.

---

of adequate protection of an interest in property of such party in interest; or (2) with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization.