GRANITE EQUIPMENT LEASING CORPORATION *v.* ACME PUMP COMPANY, INC.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 5—decided October 31, 1973

*Gerald A. Roisman,* for the appellant (defendant).

*Robert A. Slavitt,* with whom were *I. Milton Widem* and, on the brief, *Abraham D. Slavitt,* for the appellee (plaintiff).

BOGDANSKI, J. The plaintiff, Granite Equipment Leasing Corporation, hereinafter Granite, brought an action against the defendant, Acme Pump Company, Inc., hereinafter Acme, for damages arising out of the alleged breach of a lease of an accounting machine. Upon the filing of an answer and other pleadings by Acme, Granite moved for summary

judgment on the issue of liability, which motion was granted. The court then held a hearing on the question of damages. Acme has appealed to this court from the judgment as rendered.

On October 28, 1968, Granite and Acme entered into an agreement which purported to be a lease of an accounting machine manufactured by the National Cash Register Company. By the terms of this agreement Acme obligated itself to make sixty monthly payments of $150.05 to Granite. The agreement provided that at the end of the lease period Acme had the option of purchasing the machine for a price equal to 10 percent of the initial cost of the machine to Granite, i.e. $682.07. After making nine payments Acme defaulted, leaving a balance due of $7652.55. Granite thereupon replevied the machine and sold it at a private sale to an unrelated New York City firm at a considerable loss. The trial court awarded Granite a deficiency judgment plus costs and attorney's fees, totaling $7071.09.

Most of Acme's numerous assignments of error have not been briefed and are thus considered abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; see Maltbie, Conn. App. Proc. (2d Ed.) § 327. Acme's remaining claims are: that the trial court erred in finding that the transaction between the parties was a lease of equipment; that the agreement in question created a security interest and therefore fell within the provisions of article 9 of the Uniform Commercial Code (General Statutes §§ 42a-9-101 to 42a-9-507); that Granite was obliged to satisfy the notice requirements of General Statutes § 42a-9-504 (3) before selling the repossessed machine; that the court erred in finding that Acme

had notice of the sale; and that, as a matter of law, Granite's failure to satisfy the statutory notice requirements precluded it from obtaining a deficiency judgment.

Article 9 of the Uniform Commercial Code applies "to any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures . . . ." General Statutes § 42a-9-102 (1) (a). Section 42a-1-201 (37) defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation," and further provides: "Unless a lease . . . is intended as security, reservation of title thereunder is not a 'security interest' . . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Acme seeks to have this court rule, as a matter of law, that its lease agreement created a security interest because it contained an option provision for Acme to purchase the machine for a "nominal consideration" as that term is used in § 42a-1-201 (37) (§ 1-201 [37] of the Uniform Commercial Code). The court in *In re Wheatland Electric Products Co.*, 237 F. Sup. 820, 821–22 (W.D. Pa.), construed the same section of the code (Pa. Stat. tit. 12A, § 1-201 [37]) and commented that "[c]ourts, in referring to the term 'nominal consideration,'

frequently use it interchangeably with the sum of $1.00 or some other small amount." "Nominal" is defined by Webster, Third New International Dictionary as "being so small, slight, or negligible as scarcely to be entitled to the name: trifling, insignificant."

It is true that consideration may be sizable and still be "nominal" within the meaning of § 42a-1-201 (37). In *Peco, Inc.* v. *Hartbauer Tool & Die Co.,* 262 Ore. 573, 577, 500 P.2d 708, for example, the court held that a lease agreement created a security interest where the optional purchase price was 10 percent of the market value of the leased property at the time the option was exercised. The record here, however, is devoid of any evidence as to the market value of the machine at the termination of the lease. We cannot rule that 10 percent of the original purchase price, or $682.07, is "nominal consideration" as a matter of law.

Hence, the true character of the agreement between Granite and Acme was a question of fact to be decided by the trial court in the first instance. General Statutes § 42a-1-201 (37). Although Acme argues that a security interest was actually intended, on the basis of some of the terms of the agreement, it points to nothing else in the record to support this claim. To distinguish a true lease from a security agreement in the guise of a lease by the ascertainment of the parties' intent, as required by the Uniform Commercial Code, is often a difficult matter. See comment, "Leases as Security: Some Problems of Identification," 8 B.C. Ind. & Com. L. Rev. 764. The question of the intent of the parties to a contract is always one of fact for the trial court. *Ferrigno* v. *Odell,* 113 Conn. 420, 426, 155 A. 639.

We cannot conclude that the trial court, on the facts and pleadings before it, erred in finding that the transaction was a lease.

Since our ruling on this issue is dispositive of this appeal, there is no need to consider the defendant's remaining claims.

There is no error.

In this opinion the other judges concurred.