## TENNANT CO. *v.* MARTIN'S LANDSCAPING, INC.

SUPERIOR COURT  JUDICIAL DISTRICT OF  FILE No. 071799
WATERBURY

Memorandum filed September 5, 1986

*Timothy B. Yolen,* for the plaintiff.

*Shea & Hanahan,* for the defendant.

GILL, J. This matter was tried to the court, and the parties, as indicated in their respective memoranda of law, agree on the following facts: The plaintiff, Tennant Co., sold a used gasoline powered sweeper to the defendant, Martin's Landscaping, Inc., as evidenced by invoice dated April 3, 1984. The cash price for the sweeper was $8000 plus $600 sales tax and $274 freight. The plaintiff financed the sweeper and the defendant agreed to pay $296 per month for thirty-six months.

The sweeper was delivered to the defendant on April 23, 1984. Subsequently, it became obvious to the parties that the machine did not work for the purpose required of it by the defendant, that being to sweep parking lots which contained speed bumps. The defendant's special need for the sweeper was not known to the plaintiff.

The plaintiff performed repairs to the sweeper on May 1, 1984. One monthly rental payment of $296 was made by the defendant. Thereafter, the defendant chose to stop making payments on the machine and requested the plaintiff to take it back and to cancel the agreement.

The plaintiff repossessed the machine on February 8, 1985, and commenced this deficiency action on February 27, 1985. The plaintiff, through its counsel, notified the defendant, through its counsel, by letter dated October 22, 1985, that the sweeper had been resold for $9000. In the same letter the plaintiff notified the defendant that it had expended $2500 in overhauling the machine. No other notice of the sale of the machine or notice of deficiency was given to the defendant.

The written agreement entered into between the parties contains a choice of law provision which provides that it "shall be governed by and construed in accordance with the laws of the state of Minnesota, and both parties consent to jurisdiction of Minnesota state courts." As both parties have premised their arguments in their memoranda on Connecticut case law and have argued the case in this state's Superior Court, the court deems that the parties have effectively waived the choice of law provision. Connecticut law will be applied to the facts of the present action.

The first issue which the court must resolve is whether the written agreement entered into by the parties created a security interest in the plaintiff. Specifically, the court must decide whether the agreement, entitled "equipment lease," is a security agreement couched in the terms of a lease, or whether it is a "true" lease whereby no security interest was intended to be created.

Article nine of the Connecticut Uniform Commercial Code applies "to any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures . . . ." General Statutes § 42a-9-102 (1) (a). A security interest under the code is "an interest in personal property or fixtures·which secures payment or performance of an obligation." General Statutes § 42a-1-201 (37). That section further provides that "[u]nless a lease . . . is intended as security, reservation of title thereunder is not a 'security interest.' . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no addi-

tional consideration or for nominal consideration does make the lease one intended for security." General Statutes § 42a-1-201 (37). The true character of the agreement is a question of fact to be decided by the trial court. *Granite Equipment Leasing Corporation* v. *Acme Pump Co.,* 165 Conn. 364, 368, 335 A.2d 294 (1973).

The written agreement entered into between the parties, dated April 4, 1984, is entitled "equipment lease." The plaintiff is designated, and referred to in the lease provisions, as the lessor of the equipment, and the defendant as the lessee. The lease indicates that it is for an initial term of thirty-six months, beginning April 23, 1984, and ending April 22, 1987. Paragraph three of the lease provides that the defendant is to pay to the plaintiff thirty-six "equal monthly rental payments" of $296 plus tax, the aggregate rental being $10,656. The agreement contains both an option to renew and an option to purchase. If the defendant were to exercise its option to purchase, the option price would be $800 plus tax at the end of the initial term, $640 plus tax at the end of the first renewal term subsequent to the first. The agreement further obligates the defendant to keep the property insured to the plaintiff's benefit, and to pay all taxes, assessments and other governmental charges on the equipment.

A careful review of the provisions of the agreement shows that the parties intended it to create a security interest. As stated in *Tishman Equipment Leasing, Inc.* v. *Levin,* 152 Conn. 23, 28, 202 A.2d 504 (1964), "[r]egardless of what name the parties give to a transaction, the courts, in general, look beyond the form to the substance, and when one who is called a lessee may become the owner of the leased property at the end of a lease term on full payment of the stipulated rent or by the payment of a small additional amount, the

transaction is generally held to be a conditional sale, even though it is couched in the terms of a lease."

In the present action, the defendant had the ability to purchase the sweeper at the end of the initial term of the agreement for the option price of $800 plus tax, a figure which is 7.5 percent of the aggregate rental. The agreement provides the defendant with the ability to become the owner of the sweeper for nominal consideration. See *Granite Equipment Leasing Corporation* v. *Acme Pump Co.,* supra, 368 (nominal consideration may be sizable and still be "nominal" within the meaning of § 42a-1-201 [37]). Accordingly, pursuant to § 42a-1-201 (37) of the General Statutes, the lease at issue is one intended for security and is governed by the provisions of article nine of the Connecticut Uniform Commercial Code.

This conclusion finds support in the facts and memoranda presented by the parties. In their agreed upon statement of facts the parties refer to the transaction as a "sale" and indicate that the plaintiff "financed" the sweeper. These facts are indicative of an installment sale agreement rather than a true lease. Additionally, the parties have premised their arguments in their respective memoranda of law on the provisions of article nine. This further indicates that the parties intended the agreement to create a security interest.

The court is next confronted with the issue which is commonly referred to as the misbehaving creditor. Specifically, the issue before the court is whether the plaintiff's failure to comply with the notice provision of § 42a-9-504 (3) of the General Statutes precludes it from seeking a deficiency judgment. The plaintiff has conceded that it did not comply with the notice provision.

Upon the defendant's failure to make the required monthly payments, the plaintiff elected to proceed by

taking possession of the sweeper and selling it in a private sale. See General Statutes §§ 42a-9-503 and 42a-9-504. By electing so to proceed, the plaintiff was bound to comply with § 42a-9-504 which provides, in pertinent part, that "[u]nless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ."

Additionally, the code provides that if "the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions." General Statutes § 42a-9-507 (1). If the sale occurred without notification to the debtor, he has the right to recover from the creditor "any loss caused by a failure to comply with the provisions of this part." General Statutes § 42a-9-507 (1).

"Currently, there is a wide contrariety of judicial opinion regarding the creditor's right to a deficiency under the Uniform Commercial Code when notice of resale is defective." *Wilmington Trust Co.* v. *Conner,* 415 A.2d 773, 777 (Del. 1980). One of the reasons for the disparity of opinions is the code's silence on the issue. See J. White & R. Summers, Uniform Commercial Code (2d Ed.) § 26-15.

The Connecticut Supreme Court has not addressed the issue, and a review of the general case law discloses that three lines of authority have developed. One line of authority adheres to the "absolute bar" rule. These courts hold that the secured party's failure to comply strictly with the notice provisions of the code is an absolute bar to recovery. *Ford Motor Credit Co.* v. *Price,*

163 Cal. App. 3d 745, 751, 210 Cal. Rptr. 17 (1985); *Barbree* v. *Allis-Chalmers Corporation,* 250 Ga. 409, 412, 297 S.E.2d 465 (1982); *Rock Rapids State Bank* v. *Gray,* 366 N.W.2d 570, 574 (Iowa 1985); *First National Bank of Maryland* v. *DiDomenico,* 302 Md. 290, 297–98, 487 A.2d 646 (1985); *Wippert* v. *Blackfeet Tribe,* Mont. , 695 P.2d 461, 465 (1985); *Allis-Chalmers Corporation* v. *Haumont,* 220 Neb. 509, 512, 371 N.W.2d 97 (1985). The rationale underlying the "absolute bar" rule was enunciated in *Skeels* v. *Universal C.I.T. Credit Corporation,* 222 F. Sup. 696, (W.D. Pa. 1963), modified on other grounds, 335 F.2d 846 (3d Cir. 1964), the leading case for this line of authority. Judge Willson stated that to permit a secured party to recover a deficiency judgment from the debtor where no notice is given "permits a continuation of the evil which the Commercial Code sought to correct." Id., 702.

A second line of authority, which originated in the Arkansas courts; see J. White & R. Summers, supra, § 26-15; is commonly referred to as the "rebuttable-presumption" standard or the "shift" theory. In *Norton* v. *National Bank of Commerce of Pine Bluff,* 240 Ark. 143, 150, 398 S.W.2d 538 (1966), the premier case for this line of authority, the court held that where a secured creditor takes possession of and sells collateral without giving the debtor notice of the same there arises a "presumption in the first instance that the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law." See also *United Bank Alaska* v. *Dischner,* 685 P.2d 90, 93 (Alaska 1984); *Weiner* v. *American Petrofina Marketing, Inc.,* 482 So.2d 1362, 1364–65 (Fla. 1986); *Snake River Equipment Co.* v. *Christensen,* 107 Idaho 541, 545, 691 P.2d 787 (1984); *First Galesburg National*

*Bank & Trust Co.* v. *Joannides,* 103 Ill. 2d 294, 300–301, 469 N.E.2d 180 (1984); *Farmers State Bank of Leeds* v. *Thompson,* 372 N.W.2d 862, 866 (N.D. 1985); *Federal Deposit Ins. Corporation* v. *Tempest Fugat,* 75 Or. App. 536, 707 P.2d 81, 83 (1985).

The rules promulgated by the Arkansas Supreme Court in *Norton* and its progeny have been summarized as follows: "First, the secured party brings suit for a deficiency. The debtor responds by claiming that his opponent violated the provisions of Part Five of Article Nine in some way. If the court finds that the secured party committed a foul, it penalizes him by indulging in the presumption that the value of the collateral is equal to the outstanding debt. However, the secured party can still recover a deficiency if he can convince the court that the reasonable value of the collateral was less than the outstanding debt." J. White & R. Summers, supra, § 26-15, pp. 1131–32.

A third view, which appears to be followed in a minority of jurisdictions, is commonly referred to as the "set-off" theory. This line of authority holds that a secured party who fails to give notice to the debtor as required by § 42a-9-504 (3) of the code may still pursue the remedy of a deficiency judgment, but subject to a reduction for the debtor's losses under § 42a-9-507 (1). *Chapman* v. *Field,* 124 Ariz. 100, 104, 602 P.2d 481 (1979); *Grant County Tractor Co.* v. *Nuss,* 6 Wash. App. 866, 869–70, 496 P.2d 966 (1972); see also J. White & R. Summers, supra, § 26-15.

Although the Connecticut Supreme Court has yet to address the issue, two Superior Court decisions have discussed whether a misbehaving creditor is entitled to a deficiency judgment. In *Savings Bank of New Britain* v. *Booze,* 34 Conn. Sup. 632, 636–37, 382 A.2d 226 (1977), Judge Sponzo, in an opinion concurred in

by Judges Speziale and Parskey, endorsed in dicta the "rebuttable-presumption" standard promulgated in the Arkansas cases. In so endorsing, the court rejected the "absolute bar" line of authority.

A contrary result was reached, however, in *Hertz Commercial Leasing Corporation* v. *Dynatron, Inc.*, 37 Conn. Sup. 7, 427 A.2d 872 (1980), wherein the plaintiff sought a deficiency judgment against the defendant on an alleged default by the defendant under an equipment lease. The case was decided under the laws of the state of New York in accordance with a choice of law provision in the agreement at issue. The court noted, however, that "the language of both the New York and Connecticut statutes on this issue is substantially or entirely the same," and that the court's conclusion "is the same whether New York or Connecticut law, or both, is applicable." Id., 10.

The court held, inter alia, that since the plaintiff failed to give the defendant notice "in compliance with the controlling New York statutes, the plaintiff is not entitled to recover a deficiency judgment in any amount whatsoever." Id., 15. In so holding, the court cited to the contrary result reached in *Savings Bank of New Britain* v. *Booze,* supra.

This court then is presented with three distinct views on whether a misbehaving creditor is entitled to a deficiency judgment. This court adheres to the "rebuttable-presumption" theory. Therefore, the presumption arises that the value of the sweeper is equal to the outstanding debt, thereby shifting the burden to the plaintiff to prove that the reasonable value of the collateral is less than the debt. Here that burden has not been met by the plaintiffs. See *Associates Capital Services Corporation* v. *Ricciardi,* 408 A.2d 930, 934 (R.I. 1979).

Judgment is rendered for the defendant.