TOUCHE ROSS LIMITED, Liquidator of Northland Bank, Plaintiff-Appellee, *v.* WALTER FILIPEK, HILDA FILIPEK, and EDGAR HINMAN, Defendants-Appellants, and 214142 HOLDINGS LTD., a Canadian corporation; THRIFTWAY PHARMACY LTD., a Canadian corporation; JULIUS WALTON; MAMIE WALTON; JAMES BENEDETTO; AGNES BENEDETTO; THE HARRY KAHUAKAILANI BROWN CORPORATION, a Hawaii corporation; ROBERT ROMER; RONALD DIGGINS; RICHARD BEAMISH; CURCI-TURNER CO.; JOHN CURCI; LOUIS TURNER; NAKAMOTO, YOSHIOKA & OKAMOTO, a Hawaii law corporation; and JOSEPH W. ANDREWS, Director of Finance, County of Hawaii, Defendants-Appellees, and W. J. FRANCL CONSULTING, LTD., Intervenor-Defendant-Appellee, and JOHN DOES 1-10; and DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20, Defendants

NO. 13310

(CIVIL NO. 87-3051-09)

JULY 28, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This is an appeal from a partial summary judgment in favor of plaintiff-appellee Touche Ross Limited (Touche Ross), Liquidator of Northland Bank (Bank), in a mortgage foreclosure action. Defendants-appellants Walter Filipek (Filipek), Hilda Filipek (Hilda), and Edgar Hinman (Hinman) (collectively Appellants), guarantors of the loans secured by mortgages which were being foreclosed in the action, contend, *inter alia,* that the lower court improperly granted the summary judgment because there were genuine issues of material fact with respect to their affirmative defense of fraudulent inducement. We agree. Accordingly, we vacate the summary judgment as to Appellants only and remand the case for further proceedings.

## I. FACTS

### A. *Pre-Complaint Facts*

In October 1984, Filipek and Hinman were the sole shareholders and officers of 214142 Holdings Ltd. (Holdings), a Canadian corporation, which owned 15.463 acres of land in Kapalaoa, North Kona, Hawaii (Land). Thriftway Pharmacy Ltd. (Thriftway) is a Canadian corporation whose principal owner was Hinman.

On October 17, 1984, the Bank, a Canadian banking institution, entered into a loan agreement (Loan Agreement) with Holdings. The Loan Agreement provided for a loan in the principal amount

of $5,050,000[1] to be advanced as follows: (1) $2,775,000 to pur-
chase the Land; (2) $875,000 to be invested by Holdings in a cer-
tificate of deposit to be used to pay amounts due under the Agree-
ment, including a maximum amount of $225,000 "to finance de-
velopment costs to the construction stage" concerning the Land;
(3) $750,000 to the Bank for a commitment fee; and (4) $650,000
for a renewal fee if the Bank exercises its right to renew the loan.
The Loan Agreement included an integration clause which read as
follows:

> This Agreement constitutes the entire agreement between
> the parties hereto relating to the subject matter hereof and
> supersedes all prior and contemporaneous agreements, under-
> standings, negotiations and discussions, whether oral or written,
> of the parties and there are no warranties, representations or
> other agreements among the parties in connection with the sub-
> ject matter hereof except as specifically set forth herein.

Record, Vol. 4 at 29-30.

On the same day that the Loan Agreement was entered into,
Holdings signed and delivered to the Bank a promissory note for
$4,400,000 (then equivalent to $3,293,413.17 American) (First
Note). The First Note was secured by a mortgage covering the
Land (First Mortgage) and the guarantees of Filipek, Hilda, Hin-
man, and Thriftway. Pursuant to a hypothecation agreement,
Filipek and Hinman, as guarantors, transferred and hypothecated
to the Bank all of their shares of Holdings stock.

Also on the same day, Thriftway signed and delivered to the
Bank a promissory note for $1,150,000[2] (then equivalent to
$860,778.44 American) (Second Note).[3] The Second Note was

---

[1] In this opinion, unless otherwise specified, the dollar amounts are Canadian
dollar amounts.

[2] The $1,150,000 loan to Thriftway Pharmacy Ltd. and the $4,400,000 loan to
214142 Holdings Ltd. (Holdings) totaled $5,550,000, which exceeded the
$5,050,000 referred to in the October 17, 1984 loan agreement (Loan Agreement).

[3] The Loan Agreement did not indicate that any loan would be made to Thrift-
way. However, Dale Peterson, the "Manager, Corporate Accounts" of Northland
Bank (Bank) at the time of the loans to Holdings and Thriftway, stated in his
affidavit as follows:

> 9. Rather than having 214142 Holdings Ltd. as the full borrower of funds
> (i.e. approximately $6,000,000.00) with Thriftway Pharmacy as guarantor, the

guaranteed by Filipek, Hinman, and Holdings. To secure its guarantee, Holdings executed and delivered to the Bank a mortgage covering the Land (Second Mortgage).

Holdings and Thriftway, as well as the guarantors, defaulted in the repayment of the First and Second Notes on the respective maturity date, December 1, 1985.

In the interim, the Bank had ceased its operations and on September 29, 1985, the Governor General in Council appointed Willard Z. Estey, as Commissioner, to "inquire into and report on the state of affairs surrounding the cessation of operations" of both the Bank and another bank. Record, Vol. 3 at 97. On January 20, 1986, the Winnipeg Judicial Centre of the Queen's Bench of the Dominion of Canada appointed Touche Ross as Liquidator of the Bank. As the court-appointed Liquidator, Touche Ross became the successor in interest to the Bank.

### B. *Post-Complaint Facts*

On September 21, 1987, Touche Ross filed a complaint in the First Circuit Court of the State of Hawaii, alleging default of the First and Second Notes and seeking foreclosure of the First and Second Mortgages. The complaint named Holdings, Thriftway, Filipek, Hilda, Hinman, and other parties who may claim an interest in the Land as defendants.

On November 19, 1987, Kazuhisa Abe, as attorney for Holdings, Thriftway, Filipek, Hilda, and Hinman, filed an answer and a counterclaim. The answer included an affirmative defense that Holdings, Thriftway, and the personal guarantors were "induced to execute the documents by the [false] representations of the Bank's servants and agents." Record, Vol. 1 at 294. The counterclaim alleged, *inter alia,* fraud on the part of the Bank and sought compensatory and punitive damages.

---

Bank elected to make separate loans to Thriftway ($1,500,000.00) and 214142 Holdings Ltd. ($4,500,000.00) to improve the aesthetics of the package. The Northland Bank recognized the risky nature of their advances and felt this would improve their security positions in the event of default by the borrower.
Record, Vol. 4 at 73.

On April 21, 1988, Touche Ross moved for partial summary judgment and an interlocutory decree of foreclosure. Touche Ross sought summary judgment on its complaint only and not as to the counterclaim. Thereafter, on May 6, 1988, Mr. Abe moved to withdraw as counsel for Holdings, Thriftway, and the personal guarantors based on an understanding that he was to file an answer and a counterclaim only and was then to be replaced by successor counsel. On May 12, 1988, the law firm of Fujiyama, Duffy & Fujiyama (Successor Counsel) entered its appearance as counsel for Holdings, Thriftway, Filipek, Hilda, and Hinman, and filed a memorandum in opposition to Touche Ross' motion for partial summary judgment.

Successor Counsel received a letter dated May 16, 1988, from chartered accountant George Lomas, stating that he had been appointed the Receiver/Manager for Thriftway by the Court of Queen's Bench of Alberta and that Successor Counsel had no authority to act for Thriftway. Successor Counsel also received a letter dated May 16, 1988, from Touche Ross, stating that (1) pursuant to the October 17, 1984 hypothecation agreement, all shares of Holdings stock were seized on December 22, 1987; (2) new directors replaced all of the Holdings' directors; (3) the new directors, in turn, replaced the corporate officers; and (4) Successor Counsel was "no longer authorized to act in any capacity or in any matter on behalf of [Holdings.]" Record, Vol. 3 at 266. The record therefore indicates that Successor Counsel only represents Filipek, Hilda, and Hinman, and that Holdings and Thriftway are without counsel.

On August 12, 1988, the lower court granted Touche Ross' motion for partial summary judgment and interlocutory decree of foreclosure, together with a Hawaii Rules of Civil Procedure (HRCP) Rule 54(b) finality certification. Filipek, Hilda, and Hinman timely appealed.

## II. QUESTION OF MOOTNESS

A review of the record indicates that Appellants did not seek to stay the enforcement of the summary judgment and foreclosure order. Consequently, the court-appointed commissioner sold the Land to a third-party at a public auction held on October 14, 1988.

We take judicial notice of the fact that the lower court confirmed the commissioner's sale of the Land on January 25, 1989. *See Wohlschlegel v. Uhlmann-Kihei, Inc.,* 4 Haw. App. 123, 125 n.4, 662 P.2d 505, 508 n.4 (1983).

In *City Bank v. Saje Ventures II,* 7 Haw. App. ____, 748 P.2d 812 (1988), we held that where a mortgage foreclosure sale of real property to a third-party good faith purchaser has been confirmed and there has been no stay of enforcement of the confirmation order and the sale has been closed, an appeal from the confirmation order is moot and subject to dismissal. In the case at hand, however, Appellants do not seek to set aside the judicial sale of the Land. Rather, they are seeking to overturn the lower court's adjudication of their liability as guarantors of the First and Second Notes. Therefore, the appeal is not moot.

### III. CHOICE OF LAW

Initially, we will discuss the applicable law in the disposition of this appeal.

Holdings and Thriftway are Canadian corporations and the Bank is a Canadian banking institution. Filipek, Hilda, and Hinman, the guarantors of the First and Second Notes, are residents of Canada. The Loan Agreement contains a choice of law provision providing that it "shall be governed by and construed in accordance with the laws of the Province of Alberta." Record, Vol. 4 at 31. Similarly, each guarantee includes a clause stating that it "shall be construed in accordance with the laws of the Province of Alberta." Record, Vol. 2 at 268.

In their respective memoranda of law submitted to the lower court, however, both parties relied on Hawaii statutes and case law. Also, in their appellate briefs, both parties premised their arguments on Hawaii case law. Under such circumstances, we deem that the parties have "effectively waived the choice of law provision" in the loan documents. *Tennant Co. v. Martin's Landscaping, Inc.,* 40 Conn. Supp. 475, 477, 515 A.2d 665, 666 (1986). *See also Morse Electro Products Corp. v. S. S. Great Peace,* 437 F. Supp. 474, 487 (D. N.J. 1977).

We therefore apply Hawaii law in determining this appeal.

## IV. FRAUDULENT INDUCEMENT

Appellants assert that since the Bank fraudulently induced Holdings and Thriftway to execute the First and Second Notes, those Notes are invalid and voidable and, consequently, their personal guarantees of those Notes are also invalid and unenforceable. They then contend that because there are genuine issues of material fact regarding this defense, the lower court erred in granting a summary judgment in favor of Touche Ross. We agree.

### A.

In *Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 7 Haw. App. ____, 753 P.2d 807 (1988), we set forth the essential elements constituting fraudulent inducement sufficient to invalidate a contract. Those elements are "(1) a representation of material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his] damage." *Id.* at ____, 753 P.2d at 811 (quoting *Dement v. Atkins & Ash*, 2 Haw. App. 324, 327, 631 P.2d 606, 608 (1982) (citations omitted)). We stated that "[t]he false representation, to be actionable, must relate to a past or existing material fact[.]" *Murphy*, 7 Haw. App. at ____, 753 P.2d at 812. However, we noted an exception that "[a] promise relating to future action or conduct will be actionable, . . . if the promise was made 'without the present intent to fulfill the promise[.]' " *Id.* (quoting *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 6 Haw. App. 125, 140, 712 P.2d 1148, 1159 (1985)).

Appellants claim that the misrepresentations made by the Bank were both "factual" and "promissory" in nature. In his affidavit opposing Touche Ross' motion for summary judgment, Filipek stated that the Bank misrepresented that Epicon Properties, Inc. (Epicon), the Bank's affiliate company, "had personnel with development expertise who would assist [Holdings and its officers] in their attempt to develop the [Land]." Record, Vol. 3 at 119. Filipek also stated that the Bank promised (1) to "advance necessary and sufficient funds" for development costs "to obtain a land use change and also the planning, design, and legal work necessary to develop the [Land] for eventual project financing and construc-

tion" and (2) to provide "long-term financing (including refinancing of the land loan and construction funds)[,]" *id.*, but had no intention of fulfilling such promises.

Viewing the facts in the record and the reasonable inferences therefrom in the light most favorable to Appellants, the non-moving parties, *Fernandes v. Tenbruggencate*, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982); *Messier v. Association of Apartment Owners*, 6 Haw. App. 525, 533, 735 P.2d 939, 946 (1987), we conclude that there are genuine issues of material fact relating to the fraudulent inducement defense.

The affidavits of Filipek and T. Wayne Franchuk (Franchuk), Filipek's and Hinman's advisor regarding development of the Land, indicate that the alleged representations made by the Bank were material. The loans sought from the Bank were for (1) the payment for the Land, (2) the endeavor to change its use from conservation to urban, and (3) the ultimate development of the Land. Therefore, the alleged representation regarding Epicon's expertise in land development and the promises by the Bank to advance development costs and provide long-term financing are clearly material with respect to the loan transaction.

Filipek's affidavit shows that Holdings and Thriftway reasonably believed that the representations regarding Epicon's expertise were true and, consequently, they relied upon them. Dale Peterson, who was a manager of the Bank at the time the loans were made, stated in his affidavit that although a "typical [commitment] fee would be . . . ½ - 2% of the loan amount[,]" in this case it was "approximately 12% of the loan amount." Record, Vol. 4 at 73. He further stated that a "part of the consideration for this inordinate Commitment Fee" was the Bank's promise that "it would provide development expertise and assistance through Epicon[.]" *Id.*

From the portions of Commissioner Estey's "Report of the Inquiry into Collapse of the CCB[4] and Northland Bank" (Report),[5] which were submitted by Appellants below and are part of the

---

[4] CCB is the acronym for Canadian Commercial Bank.

[5] According to its table of contents, the "Report of the Inquiry into the Collapse of the CCB and Northland Bank" (Report) exceeds 639 pages in length.

record, it can be reasonably inferred that Epicon did not have the development expertise it was represented to have, the Bank was in precarious financial condition, and the Bank had no intention of advancing development costs and providing long-term financing at the time the alleged representations were made.

Based on the state of the record, the factual issue of whether the Bank fraudulently induced Holdings and Thriftway to enter into the loan transaction was a matter for jury determination.

## B.

Touche Ross argues, however, that since the loan documents are unambiguous in their terms and contain integration clauses, the parol evidence rule precludes all prior or contemporaneous representations and agreements from varying the terms therein. We disagree.

The general rule is that the parol evidence rule is inapplicable "where the issue is whether the contract was procured by fraud." 37 Am. Jur. 2d *Fraud and Deceit* § 451 at 620 (1968) (footnote omitted). *See also Cosmopolitan Fin. Corp. v. Runnels,* 2 Haw. App. 33, 40, 625 P.2d 390, 396 (1981). Professor Sweet explains the inapplicability of the parol evidence rule where fraud is involved as follows:

> It is clear that a contract can be attacked if there are formation defects of a serious nature. If consent is not freely given, then no contract is formed, and consent is not freely given if it is induced by fraud. It follows that evidence establishing such a defect cannot be excluded by the parol evidence rule. The rule presupposes a contract, since it is grounded on the intention of the parties that the writing is to contain their complete agreement.

Sweet, *Promissory Fraud and the Parol Evidence Rule,* 49 Calif. L. Rev. 877, 887 (1961) (footnote omitted).

The courts are divided, however, where promissory fraud is involved. Some courts preclude the introduction of parol or extrinsic evidence when the alleged fraud involves a promise which varies the terms of an integrated written instrument. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. Pendergrass,* 4 Cal. 2d 258, 48 P.2d 659 (1935) (*Pendergrass* and its progeny are discussed and criticized in

Sweet, 49 Calif. L. Rev. at 878-87). But the majority rule admits the parol or extrinsic evidence even though it conflicts with the terms of the integrated written instrument. *See* E. Farnsworth, *Contracts* § 7.4 at 465-66 (1982); *see also Pinnacle Peak Developers v. TRW Investment Corp.*, 129 Ariz. 385, 631 P.2d 540 (Ariz. App. 1980) (the opinion lists the cases that follow the majority rule and those that do not).

We choose to follow the majority rule because as an Oregon appellate court stated:

> Oral promises made without the promisor's intention that they will be performed could be an effective means of deception if evidence of those fraudulent promises were never admissible merely because they were at variance with a subsequent written agreement.

*Howell v. Oregonian Publishing Co.*, 85 Or. App. 84, 87, 735 P.2d 659, 661 (1987).

## C.

Touche Ross also argues that the statute of frauds[6] bars proof of the existence of the alleged oral promises to advance development costs and provide long-term financing since they were not to be performed within one year from the time they were made. We do not agree.

The authorities conflict on the issue of whether an action based on fraud or deceit, involving an oral promise within the statute of

---

[6] Hawaii Revised Statutes (HRS) § 656-1 (1985) provides in relevant part as follows:

> Certain contracts, when actionable. No action shall be brought and maintained in any of the following cases:
>
>    *   *   *
>
> (5) Upon any agreement that is not to be performed within one year from the making thereof;
>
>    *   *   *
>
> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

frauds, may be maintained. 37 Am. Jur. 2d *Fraud and Deceit* § 70 (1968). On this issue, our supreme court stated:

> The avowed purpose of the statute of frauds was to prevent the perpetration of fraud. It still plays a meaningful role in assuring fair and honest dealings between parties to a transaction, but it was never designed to operate as an instrument of fraud or to serve as a vehicle by which unconscionable injury may be inflicted.

*Dobison v. Bank of Hawaii*, 60 Haw. 225, 226, 587 P.2d 1234, 1235 (1978) (citation omitted). The court concluded that "where an action for actual fraud will lie, Hawaii Revised Statutes (HRS) § 656-3[7] will not constitute a bar to the action." *Id.* (footnote in original omitted; footnote 7 added).

Relying on the *Dobison* rationale and "to implement the true policy behind the Statute of Frauds, which is to prevent fraud or any other type of unconscionable injury[,]" *McIntosh v. Murphy*, 52 Haw. 29, 37, 469 P.2d 177, 181 (1970), we hold that HRS § 656-1(5)[8] does not bar Appellants from proving the existence of the Bank's alleged oral promissory representations in their fraudulent inducement defense.

### D.

Finally, Touche Ross argues that the lower court erred in considering the Report because the affidavits referring to the Report, and the Report itself, fail to meet the requirements of HRCP Rule 56(e).[9] We find no violation of the rule.

---

[7] HRS § 656-3 (1985) reads as follows:

Representation of another's credit, etc., when actionable. No action shall be brought and maintained, to charge any person upon, or by reason of, any representation or assurance, made concerning the character, conduct, credit, ability, trade, or dealings of another person, unless such representation or assurance is made in writing, and signed by the party to be charged thereby, or by some person, thereunto by the party lawfully authorized.

[8] *See supra* note 6.

[9] Hawaii Rules of Civil Procedure Rule 56(e) provides in relevant part as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

We initially note that HRCP Rule 56(e) requires the filed pages of the Report to be "sworn or certified copies." We therefore disregard the copies of the pages of the Report filed in conjunction with Appellants' memorandum on May 12, 1988, because they are not certified copies and are not sworn to as being true and correct copies in Bruce Martin's affidavit. Record, Vol. 3 at 112-15. *See Guaschino v. Eucalyptus, Inc.,* 3 Haw. App. 632, 638, 658 P.2d 888, 893 (1983); *Lane v. Yamamoto,* 2 Haw. App. 176, 177, 628 P.2d 634, 635 (1981). However, copies of the pages of the Report filed by Appellants on July 25, 1988, are sworn to as being "true and correct copies" in Franchuk's affidavit and may therefore be considered in this proceeding.[10] Record, Vol. 4 at 76.

Essentially, Touche Ross claims that the contents of the Report are hearsay and inadmissible in evidence. In our view, the contents of the Report are not excludable under the hearsay rule because they are admissible as an exception to the rule under Rule 803(b)(8)(C), Hawaii Rules of Evidence (HRE), HRS Chapter 626 (1985).[11]

Rule 803(b)(8)(C), HRE, provides that "in civil proceedings . . ., factual findings resulting from an investigation made pursuant to authority granted by law" are excepted from the hearsay rule. Since Rule 803(b)(8)(C), HRE, is identical to Rule 803(8)(C) of the

---

[10] The record also includes copies of certain pages of the Report filed on May 16, 1988, in support of a motion to continue the summary judgment hearing. However, the copies are not certified and are not sworn to as being true and correct copies in Bruce Martin's affidavit. *See* Record, Vol. 3 at 204-07.

[11] Rule 803(b), Hawaii Rules of Evidence, HRS Chapter 626 (1985), provides in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \*

(b) Other exceptions:

\* \* \*

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Federal Rules of Evidence, we will refer to federal case law for assistance in construing our Rule.

Although Rule 803(b)(8)(C) specifically refers to "factual findings," portions of investigatory reports "are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey,* 488 U.S. ___, ___, 109 S. Ct. 439, 450, 102 L. Ed. 2d 445, 463 (1988) (footnote omitted). Moreover, regarding trustworthiness under the Rule, "the burden is on the party opposing admission to demonstrate that the report is not reliable." *Ellis v. International Playtex, Inc.,* 745 F.2d 292, 301 (4th Cir. 1984) (citations omitted).

In this case, the Report was prepared by "the Commissioner, appointed in accordance with the terms of Order in Council P.C. 1985-2932 of 29 September 1985, to inquire into and report on the state of affairs surrounding the cessation of operations of . . . the Northland Bank[.]" Record, Vol. 4 at 85. Thus, the Report resulted from "an investigation made pursuant to authority granted by law," as required by the Rule.

Also, the portions of the Report in the record primarily include factual findings. Moreover, even if the Report contains conclusions or opinions, it is not excludable on that basis, under *Rainey.*

Finally, the circumstances attending the preparation of the Report do not indicate that it lacks trustworthiness. The Commissioner who conducted the investigation and prepared the Report was "Mr. Justice Willard Z. Estey of the Supreme Court of Canada[.]" Record, Vol. 3 at 113. Furthermore, Touche Ross does not challenge the trustworthiness of the Report.

Touche Ross implies that the Report is inadmissible because it was prepared by a foreign government. Rule 803(b)(8)(C) contains no territorial restriction and we decline to impose one by construction.

## V. BREACH OF IMPLIED COVENANT OF GOOD FAITH

Appellants also contend that the Bank breached its implied covenant of good faith and fair dealing and there are genuine issues of material fact regarding this defense. Since Appellants did

not properly plead this defense, their contention is meritless.

HRCP Rule 8(c) requires certain enumerated defenses to be set forth affirmatively. However, the enumeration is not exclusive since Rule 8(c) provides that "any other matters constituting an avoidance or affirmative defense" must also be pleaded affirmatively. Thus, "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by applicable substantive law should be pleaded, and is not put in issue by a denial[.]" 2A J. Moore, J. Lucas & G. Grotheer, Jr. *Moore's Federal Practice* § 8.27[3] at 8-182 (2d ed. 1989).

Here, Touche Ross' prima facie case was to prove (1) the execution and delivery to the Bank of the promissory notes by Holdings and Thriftway, respectively, the mortgages by Holdings, and the guarantees by Appellants; (2) the default in the payment of the notes by the makers and guarantors; (3) the appointment of Touche Ross as Liquidator of the Bank; and (4) the balances due and payable on the notes. A claim that the Bank breached its implied covenant of good faith and fair dealing under the Loan Agreement is clearly a defense which must be pleaded affirmatively. *See Bunge Corp. v. Recker*, 519 F.2d 449, 452 (8th Cir. 1975) ("lack of good faith" is closely associated with fraud or constructive fraud and would fall within the fraud, as well as the catch-all, provision of Rule 8(c) ).

The answer to the complaint in the record does not include any allegation of "bad faith" or "lack of good faith and fair dealing." On May 16, 1988, Appellants filed a motion for leave to file an amended answer and counterclaim. The proposed amended answer attached to the motion alleges a "defense of bad faith" and a "defense of lack of good faith and fair dealing." Record, Vol. 3 at 138. However, the record does not disclose that the motion was granted.

Accordingly, the defense of lack of good faith and fair dealing was waived and cannot be asserted in opposition to the motion for summary judgment.

## VI. CONCLUSION

For the reasons set forth under Part IV, *supra*, we vacate the August 12, 1988 summary judgment as to Appellants only and

remand the case for further proceedings.

Glenn K. Sato (James E. Duffy, Jr., Bruce K. Campbell and Ward F.N. Fujimoto with him on the briefs; Fujiyama, Duffy & Fujiyama, of counsel) for defendants-appellants.

Tom C. Leuteneker (Ivan M. Lui-Kwan, Steven M. Nagata and John P. Manaut with him on the brief; Carlsmith, Wichman, Case, Mukai and Ichiki, of counsel) for plaintiff-appellee.