[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Delta Leasing Services Corp., claims that the defendant, Edward Gentile, breached a written lease of an automobile. The defendant agreed that he had signed what purported to be the lease of a motor vehicle dated August 22, 1986, but claimed that in reality the lease was a contract of sale and that plaintiff had breached several statutes relating to the resale of a repossessed motor vehicle.
The plaintiff alleges in his complaint that in 1986 he leased a 1986 Datsun to defendant at a monthly rental, but that on or about September 1, 1988, the defendant ceased making the required monthly lease payments and that there was a balance of twenty nine monthly payments due and owing to plaintiff. The defendant filed six special defenses claiming that plaintiffs acceptance of the return of the car in 1988 constituted an accord and satisfaction; that plaintiff failed to comply with various provisions of the Uniform Commercial Code regarding resale of repossessed collateral; that the contract was rescinded because plaintiff brought the suit in this state rather than in New York; that the contract between the parties was one of adhesion and was CT Page 3310 unconscionable; that the contract violated the Connecticut statute relating to retail installment contracts, the Retail Installment Sales Financing Act (RISFA). General Statutes 42-83
et seq., and that plaintiff's claim would result in its being unjustly enriched. The defendant also filed a counterclaim alleging violations of the federal Consumer Leasing Act,15 U.S.C. § 1667b, because the value of the car at the time the lease began was not disclosed, and due to a provision that liability of the lessee after default would be based on the vehicle's wholesale price.
The case was referred to Attorney Melvin J. Silverman, an attorney trial referee, in accordance with General Statutes52-434 (a)(4) and Practice Book 428 et seq. The attorney trial referee conducted a trial and then filed his report recommending that judgment enter for the plaintiff against the defendant for $14,534.50, plus prejudgment interest from August 22, 1991. The referee made the following findings of fact: (1) that the defendant had knowingly and intentionally signed a lease for the plaintiff's automobile and that he breached the lease by failing to make the required monthly payments; (2) that defendant returned the 1986 Datsun to plaintiff in August, 1988, at which time the vehicle had about 9900 miles on its odometer; (3) that the vehicle was sold by plaintiff at retail in May, 1989, for $11,000, and the odometer showed 15000 miles at that time; and (4) that plaintiff was entitled to be reimbursed for its attorney's fees pursuant to the provisions of the lease.
The attorney trial referee drew certain conclusions from these findings of fact as follows: (1) that the defendant did not sign an installment sales contract, but rather signed a lease, including an option to purchase the vehicle, as alleged by plaintiff in its complaint; (2) that because of the delay in reselling the vehicle and the unexplained addition of approximately 5000 miles prior to such sale, defendant is entitled to a credit for the wholesale value of the vehicle at the time it was returned to plaintiff, viz., $11,550; (3) that the reasonable value of plaintiff's attorney's fees was $6,772.50; (4) that subtracting the wholesale price credit and payments previously made from the gross damages, which are comprised of the unpaid monthly payments plus the purchase option payment, resulted in damages of $7,762, plus attorney's fees, for a total of $14,534.50 due plaintiff; (5) that prejudgment interest should be awarded but commencing on August 22, 1991, the date the lease would have been fully paid and terminated; (6) CT Page 3311 that the terms of the lease were not unconscionable, and defendant knew precisely what he was doing when he signed the lease; (7) that defendant did not prove an accord and satisfaction as he voluntarily turned the car back to plaintiff; (8) defendant was fully compensated for plaintiff's unexplained delay in reselling the vehicle and the addition of some 5000 miles of use before the sale because of the recommendation that prejudgment interest not commence until the date the lease would otherwise have ended: and (9) that the federal Consumer Leasing Act had not been violated because it applies only to consumer leases under $25,000, and the payments due on the lease in this case totalled over $30,000.
Pursuant to Practice Book 438, the defendant Gentile moved to correct the report. He argued that the findings of fact should be amended so as to reflect his contention that the contract he signed was a retail installment contract, not a lease, viz., "a lease masquerading as a sale." In response to the defendant's motion to correct, the referee issued a supplemental report dated September 9, 1993, which reiterated his conclusion that the transaction at issue was a lease and not a retail installment sales contract, and therefore he declined to make the corrections to his report requested by defendant.
The usual review of an attorney trial referee's report by this court consists of two tasks, according to Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741, 746,583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). The first is to determine whether "there was ample evidence to support the attorney trial referee's factual findings," and the second is to rule on whether "the conclusions reached were in accordance with applicable law." In the present case, the defendant did not file exceptions asking this court to correct the report. Practice Book 439. It follows therefore that the factual findings by the referee must stand uncorrected. Ruhl v. Fairfield, 5 Conn. App. 104,106, 496 A.2d 994 (1985) (the court's role is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions. ") Failing to file exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." Bernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171
(1989).
This court's authority in reviewing an attorney trial referee's recommendations is a limited one, in any event. As our CT Page 3312 Supreme Court has held: (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Dills v. Enfield,210 Conn. 705, 714-16, 557 A.2d 517 (1989). See also Wilcox Trucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425,567 A.2d 1250 (1989) ("[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous.")
Since we must accept the referee's findings of fact in the absence of any exceptions to the report, this court's task, according to Bernard v. Gershman, supra, 656, is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court added in Bernard that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." Id.
The referee found that the defendant knowingly signed a tease of a motor vehicle and that he had breached the agreement by failing to make the required monthly lease payments. He also concluded that the defendant had not proved his counterclaim which contended that the transaction in question was in actuality a retail installment sale. The defendant Gentile did file objections to the acceptance of the referee's report. Practice Book 440, which repeat the arguments found in the motion to correct that the transaction in this case was a retail installment sale.[1]
The agreement in question is clearly entitled a "lease" as is the second document captioned as a lease with an "open-end purchase option." Both documents are replete with references to its being a "lease" and that title to the vehicle remains with the lessor until and unless the lessee exercises his option to purchase. ("This is an agreement of lease only; title to Vehicle shall remain at all times in Lessor.") Section 42a-1-201 (37) of the Uniform Commercial Code provides that whether a lease is intended as security is to be determined "by the facts of each case." The inclusion, however, of an option to purchase does not of itself make the lease one intended for security. "An agreement that upon compliance with the terms of the lease the lessee shall CT Page 3313 become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." The option rider in the present case calls for a payment of $5,000 by the lessee in order to exercise the purchase option.
In distinguishing a true lease from a security agreement in the guise of a lease, the court must ascertain the parties' intent. Granite Equipment Leasing Corp. v. Acme Pump Co., Inc.,165 Conn. 364, 368, 335 A.2d 294 (1973). "In the determination of the actual intent and purpose of the transaction, the negotiations surrounding it may properly be considered, and its real nature is a question of fact to be resolved by the trier." Tishman Equipment Leasing, Inc. v. Levin, 152 Conn. 23, 29,202 A.2d 504 (1964). The referee found as a fact that the agreement in question constituted a lease and not an installment sales contract disguised as a lease.[2]
Because of this finding of fact as to the nature of the agreement between the parties, the court agrees with the referee that judgment should enter in favor of the plaintiff because no material error in his report has been found, or any other sufficient reason why the report is unacceptable. Practice Book 443. The court finds that, in the words of Practice Book 440, his recommendations were "properly reached on the basis of the subordinate facts found."
Judgment is entered in accordance with the referee's report in favor of the plaintiff to recover $14,534.50, and in favor of the plaintiff with respect to defendant's counterclaim. With respect to interest, the referee recommended that plaintiff be awarded prejudgment interest of 10% per year from August 22, 1991. Prejudgment interest is authorized by General Statutes37-3a for the "detention of money after it becomes payable." Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 702,590 A.2d 957 (1991). Interest for two years, seven months and nine days amounts to $2,337.56, for a total judgment due plaintiff of $16,872.06. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 1st day of March, 1994.
William B. Lewis, Judge CT Page 3314