[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff seeks to recover a deficiency after repossession of the defendant's boat on which it had a mortgage. The defendant has filed a counterclaim in which he alleges fraud, negligence and unfair and deceptive practices by the plaintiff. Neither the original counterclaim, nor the amended counterclaim assert that the defendant suffered any damages as a result of the alleged wrongful conduct of the Bank, nor do they contain any prayer for relief. At trial the defendant did not offer any evidence of damages. Therefore, it appears that the three counts of the counterclaim were intended to be in the nature of special defenses to the complaint.
After a trial of the action the court finds the following, facts. On March 21, 1989 the defendant, Robert L. Day (Day), purchased a 34 foot Luhrs motor boat, named "Dream On", from Yegen Marine of Norwalk, Connecticut for $116,000. In order to finance the purchase Day borrowed $86,000 from Yegen Marine and executed a Note and Marine Security Agreement (Note), which was assigned to the plaintiff. On March 21, 1989 Day also entered into a First CT Page 6328 Preferred Ship Mortgage (Mortgage) in which he granted the plaintiff a mortgage on "Dream On" in order to secure payment of the amounts due under the Note.
Not long after he purchased the boat, Day, who was a builder, began experiencing financial difficulties due to the economic recession. In July or August, 1990 he stopped making payments due under the Note. Thereafter, in accordance with instructions from the plaintiff, Day delivered the "Dream On" to City Island Yacht Sales in order to effect the plaintiff's repossession of the boat.
On November 16, 1990 the plaintiff sent Day a notice which indicated that the boat would be sold at public auction to be conducted at the City Island Marina at 11 a.m. on November 28, 1990. The notice stated the total amount due under the Note, $84,044.15, and further stated, "You may have the right to redeem this property, prior to this auction, by paying the installments in default, plus any late charges, together with the repossession and storage costs." At auction the boat was sold for $50,000. Day did not appear at the auction to bid and did not attempt to redeem prior to the auction.
Day testified that prior to the auction he entered into an agreement with the plaintiff that the boat would be withdrawn from the auction if it did not sell for the amount of the debt. However, Day failed to present any evidence of such an agreement. He did testify that Debbie Caruso, an employee of the plaintiff, told him that the boat would be removed from auction if it did not sell for its appraised value. Such a statement, if it had been made, would not have constituted an agreement between the plaintiff and Day. Under the Note and Mortgage the plaintiff had the right to repossess the boat, sell it and seek a deficiency. Absent some consideration from Day in exchange for the plaintiff's agreement to refrain from selling the boat at any price which would have caused a deficiency, any such agreement would have been invalid for lack of consideration. Moreover, the Note and Mortgage both provided that any change in their terms had to be in writing. The agreement alleged by Day was oral.
During the later part of 1989 and 1990 the market for boats such as the "Dream On" was severely depressed. Day had attempted to have the boat sold by various local yacht brokers, but many would not even agree to take a listing to sell the boat. Yegen Marine, from whom Day had purchased the boat, told him that there was "no boat market." CT Page 6329
The best time to sell a boat such as the "Dream On" is in the Spring. However, if the plaintiff had held the boat throughout the winter, it would have incurred additional expenses. In addition, Day advised the plaintiff by letter dated November 16, 1990 that the boat should be taken out of the water by December 1, 1990 and that the insurance policy covering the boat would expire on March 21, 1991. Therefore, it would not have been commercially reasonable for the plaintiff to have delayed sale of the boat.
The rights of a secured party to take possession of collateral after default and to dispose of it in a commercially reasonable manner are specifically provided for under the Uniform Commercial Code of this state. See Connecticut General Statutes 42a-9-503 and42a-9-504 (1). Prior to disposition, the code specifically requires that "[u]nless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ." Connecticut General Statutes § 42a-9-504 (3). Connecticut Bank Trust Co. v.Incendy, 207 Conn. 15, 540 A.2d 32 (1988).
Under the so-called "rebuttable presumption" rule followed in this state, the secured party who has failed to give proper notice to the debtor is not absolutely barred from recovering a deficiency judgment. Rather, in the absence of proper notice, a presumption arises in favor of the debtor that the collateral was worth at least the amount of the debt. The burden then shifts to the secured party to establish by a preponderance of the evidence the amount that should reasonably have been obtained through a sale conducted in accordance with the "commercially reasonable" requirements of the code. Tennant Co. v. Martin's Landscaping, Inc., 40 Conn. Sup. 475,481-83, 515 A.2d 665 (1986); Savings Bank of New Britain v.Booze, 34 Conn. Sup. 632, 382 A.2d 226 (App. Sess. 1977);Connecticut Bank Trust Co. v. Incendy, 207 Conn. 15, 27-28,540 A.2d 32 (1988).
In the present case the plaintiff gave notice of public sale which complied with the requirements of Connecticut General Statutes § 42a-9-504(3). Therefore, the burden remains on the defendant to prove that the sale of the boat was not commercially reasonable. The defendant has introduced no evidence as to the value of the boat at the time it was sold, nor has he otherwise CT Page 6330 established that the sale was not commercially reasonable.
Although there was evidence that the sale did not occur during the optimum selling period, the court finds that the date of sale was dictated largely by the date of the defendant's default and the plaintiff's subsequent repossession, as well as the defendant's notification to the plaintiff that the boat had to be out of the water by December 1st. Under Connecticut General Statutes § 42a-9-507 (2), "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." see Gaynor v. Union Trust Co., 216 Conn. 458,582 A.2d 190 (1990).
The court finds that at the time the boat was sold Day owed a principal balance of $84,044.15 under the Note, the cost of repossession was $3,039.02, the net proceeds of the sale to be applied to reduce the loan was $46,960.98, and the amount of the deficiency is $37,083.17. Interest on that amount through the date hereof is $17,812.10. Judgment is hereby entered in favor of the plaintiff in the amount of $37,083.17 principal damages and $17,812.10 interest for a total of $54,895.27.
The defendant's counterclaim is premised on the allegation that the plaintiff engaged in wrongful conduct in connection with the repossession and sale of the "Dream On." The court has found that there was no proof that the plaintiff acted in a commercially unreasonable manner. The court further finds that the plaintiff did not engage in fraudulent or negligent conduct and did not engage in unfair or deceptive acts. Judgment may enter in favor of the plaintiff on the counterclaim.
By the Court, Aurigemma, J.
Judgment entered in accordance with the foregoing Memorandum of Decision.
Jonathan Field Deputy Chief Clerk